**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

                                   Case No. 00-80417

v.                                Hon. Gerald E. Rosen

DAVID BRADFORD,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION TO DISMISS OR FOR SENTENCE OF TIME SERVED**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       April 29, 2009      

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I.  INTRODUCTION

On June 21, 2000, a grand jury returned a ten-count indictment against Defendant

David Bradford and three other defendants, in which Defendant Bradford was charged

with drug conspiracy and money laundering offenses.  Defendant pled guilty to two of

these charges on September 7, 2001, and a judgment was entered on March 14, 2002

sentencing him to 84 months of imprisonment.  In this judgment, the Court ordered that

Defendant's report date be "deferred for six (6) months, or as further ordered," so that he

could pursue treatment for cancer.

This six-month period expired without any court-ordered extension or requests for

an extension.  Nonetheless, the Bureau of Prisons ("BOP") took no action, until recently, to designate a federal institution to which Defendant should report and commence serving his sentence.  The BOP eventually made this designation last year — over six years after Defendant's sentencing — and Defendant was ordered to report to the Federal Correctional Institution ("FCI") in Estill, South Carolina on September 4, 2008.[1]

Through the present motion, filed on December 18, 2008, Defendant requests that the charges against him be dismissed or that he be re-sentenced to time served, in light of the significant delay between his initial sentencing and the BOP's implementation of this sentence, and in light of the substantial steps he has taken since his sentencing to rebuild his life and make positive contributions to his family and community.  Pursuant to this Court's order, the Government responded to Defendant's motion on February 2, 2009, arguing that this Court lacks jurisdiction to grant the relief sought by Defendant.

On April 27, 2009, the Court held a hearing on Defendant's motion.  Upon reviewing the parties' written submissions and considering the arguments of counsel, the Court denied this motion at the conclusion of the April 27 hearing.  The present opinion sets forth at greater length the grounds for this ruling.

---

[1]The BOP's action evidently was spurred by a July 30, 2008 memorandum to the Court from United States Pretrial Services Officer Mary Ann Atkinson, seeking the Court's assistance in determining how to proceed in this matter.  The Court requested that the BOP be contacted, and the agency made its designation shortly thereafter.  Defendant's report date has subsequently been extended through two stipulated orders entered on September 4, 2008 and January 6, 2009, so that Defendant could pursue the relief now sought in his present motion.

## II.  **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant David Bradford is named in six of the ten counts of the June 21, 2000 indictment in this case, and is charged with conspiracy to distribute cocaine and marijuana, conspiracy to launder monetary instruments, and four counts of money laundering.  On September 7, 2001, Defendant pled guilty to the first two of these charges, and an accompanying Rule 11 plea agreement called for the dismissal of the remaining charges.

A sentencing hearing was held on February 28, 2002.  Prior to this hearing, the Government filed a motion pursuant to § 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e), requesting that the Court depart from the Sentencing Guideline range and impose a sentence of 97 to 121 months of imprisonment in light of Defendant's substantial assistance to the Government in the investigation and prosecution of his co-defendants.[2]  Defendant also moved for a downward departure, citing his then-recent treatment for a brain tumor and the psychological trauma inflicted upon him as a child.  At the February 28, 2002 hearing, the Court granted the sentence reductions sought by the parties, and sentenced Defendant to concurrent terms of 84 months' imprisonment on each of the two counts of conviction.  This sentence was set forth in a March 14, 2002 judgment, in which the Court expressly addressed Defendant's ongoing health issues and need for treatment by "order[ing] that defendant's report date b[e]

---

[2]In his present motion, Defendant states that he was attacked by one of his co-defendants and seriously injured as a result of his cooperation with the Government.

3

deferred for six (6) months, or as further ordered."  (3/14/2002 Judgment at 2.)  This judgment further directed Defendant to "surrender to the United States Marshal for this district . . . in six months as designated by the Bureau of Prisons, or as further ordered." (*Id.*)

Over the remainder of 2002, the U.S. Probation Office in Detroit received correspondence from Defendant's physician in Atlanta, Georgia, Dr. Ian Crocker, indicating that Defendant's cancer had progressed, that his disease was incurable, and that he had a limited life expectancy of "1-2 years at best."  (*See* Dr. Crocker's 11/14/2002 Letter.)  United States Probation Officer Stacey A. Fokken informed the Court in a July 9, 2002 letter that she had requested additional documentation of Defendant's medical condition, but it does not appear that any such materials were forthcoming.  Nonetheless, in its response to Defendant's present motion, the Government states that "in light of [Defendant's] alleged exceedingly limited life expectancy, no action was taken with respect to having the Bureau of Prisons designate an institution for service of [Defendant's] sentence until the summer of 2008." (Government's Response Br. at 4.)

Over the years between 2002 and 2008, Defendant continued to undergo medical treatment for cancer and related health conditions, including one or more surgeries.  He also found work, ultimately purchasing a tow truck and starting his own towing business. In letters to the Court dated August 27, 2008, Defendant and his wife have recounted the

4

positive contributions he has made during this period, both to his family and to the
surrounding community.

By memorandum dated July 30, 2008, United States Pretrial Services Officer
Mary Ann Atkinson advised the Court of the developments in this case since Defendant's
sentencing in 2002.  According to this memo, Defendant remained in regular contact with
Pretrial Services Officer Michelle Eubanks of the Northern District of Georgia, and
"remain[ed] compliant with all conditions of bond."  (7/30/2008 Pretrial Services
Memorandum at 1.)  The Court was further advised that Defendant's "cancer is currently
in remission," but that he was "experiencing brain leakage in his ear" and was "fearful if
he is required to report to prison, he will be victimized due to his frail health."  (*Id.*)  In
light of these developments, Pretrial Services requested the Court's assistance, asking (i)
whether the U.S. Marshal's Service should be notified to designate Defendant to begin
serving his sentence, (ii) whether additional documentation should be sought regarding
Defendant's medical condition, or (iii) whether a hearing should be held.

Upon reviewing this memorandum, the Court requested that Pretrial Services
contact the BOP and have Defendant designated, either to an FCI or a medical facility as
deemed appropriate.  Following this contact, the BOP instructed Defendant to report to
FCI Estill in South Carolina on September 4, 2008.  Through the present motion, filed on
December 18, 2008, Defendant requests that the charges against him be dismissed or that
he be re-sentenced to time served, in light of the BOP's delay in designating him to a

federal institution to begin serving his sentence, and in light of the steps he has taken since his 2002 sentencing to turn his life around and make a positive contribution to his family and society.[3]

### III. ANALYSIS

In seeking the dismissal of the charges against him or a sentence of time served, Defendant appeals to notions of due process, equity, and fundamental fairness.  In the brief in support of his motion, however, Defendant acknowledges that he and his counsel have been "unable to find any cases directly addressing the government's failure to designate an individual after such an extensive period of time," (Defendant's Motion, Br. in Support at 3), nor has he identified any specific source of this Court's posited authority to award the relief sought in his present motion.  Similarly, while the Government dismisses Defendant's case law as "irrelevant" and his requested relief as "ludicrous," the cases it cites do not address circumstances analogous to those presented here, but instead establish only the general proposition that federal district courts are sharply limited in their ability to modify a sentence.  Thus, the Court has been left largely to its own devices in identifying the appropriate legal framework within which to analyze Defendant's motion.

Fortunately, this independent research has uncovered a number of decisions that

---

[3]By stipulated orders dated September 4, 2008 and January 6, 2009, the Court has extended Defendant's report date to allow for his filing of the present motion and the Court's disposition of this motion.

6

the Court views as helpful signposts to the proper result here.  First, there is a fair amount

of case law on what one court has recently described as "the 'rule' or the 'doctrine' of

credit for time at liberty."  *Vega v. United States,* 493 F.3d 310, 315 (3d Cir. 2007)

(footnote with citations omitted).  As the Ninth Circuit explained many years ago:

> The least to which a prisoner is entitled is the execution of the sentence of
> the court to whose judgment he is duly subject.  If a ministerial officer,
> such as a marshal, charged with the duty to execute the court's orders, fails
> to carry out such orders, that failure cannot be charged up against the
> prisoner.  The prisoner is entitled to serve his time promptly if such is the
> judgment imposed, and he must be deemed to be serving it from the date he
> is ordered to serve it and is in the custody of the marshal under the
> commitment, if, without his fault, the marshal neglects to place him in the
> proper custody.  Any other holding would give the marshal, a ministerial
> officer, power more arbitrary and capricious than any known in the law.  A
> prisoner sentenced for one year might thus be required to wait forty under
> the shadow of his unserved sentence before it pleases the marshal to
> incarcerate him.  Such authority is not even granted to courts of justice, let
> alone their ministerial officers.  Citation of authority is hardly needed to
> establish so elementary a proposition.

*Smith v. Swope,* 91 F.2d 260, 263 (9th Cir. 1937) (citations omitted); *see also United*

*States v. Croft,* 450 F.2d 1094, 1099 (6th Cir. 1971) (pointing to *Smith* as "the authority

that guides determination in this case," and finding that the defendant was entitled to

credit against his federal sentence for time served when he was erroneously sent to state

prison instead of first serving his federal sentence); *Dunne v. Keohane,* 14 F.3d 335, 336

(7th Cir. 1994) (citing the "common law rule" that "[t]he government is not permitted to

delay the expiration of the sentence either by postponing the commencement of the

sentence or by releasing the prisoner for a time and then reimprisoning him").[4]

As revealed in the Third Circuit's comprehensive survey in *Vega,* 493 F.3d at 315-22, the various courts of appeals have followed "diverging paths" in their interpretation and application of the doctrine of "credit for time at liberty."  Some courts have held, for example, that "a delay in the commencement of a sentence by itself does not constitute service of that sentence," and that credit therefore may not be given for time erroneously spent at liberty prior to the actual commencement of the sentence.  *Leggett v. Fleming,* 380 F.3d 232, 234 (5th Cir. 2004) (footnote with citations omitted).  In other cases, however, the courts have found the doctrine applicable where, for instance, a defendant is released from state custody and is not promptly delivered to the federal prison authorities, but instead is erroneously allowed to remain at liberty for a time before being taken into federal custody to begin serving his federal sentence.  *See Clark v. Floyd,* 80 F.3d 371, 374 (9th Cir. 1996).  More generally, the Third Circuit has observed that "[n]early every court to have considered the rule of credit for time at liberty has required that the government's actions in releasing or failing to incarcerate the prisoner be negligent." *Vega,* 493 F.3d at 320 (collecting cases, including the Sixth Circuit's decision in *Croft*).

---

[4]The courts also have addressed a "waiver theory," under which "the State's lack of interest in effecting incarceration of a defendant is equivalent to a pardon or commutation, and amounts to a waiver of jurisdiction that precludes the State from incarcerating the defendant." *Bonebrake v. Norris,* 417 F.3d 938, 941 (5th Cir. 2005) (internal quotation marks and citation omitted).

8

Yet, despite the helpful discussion in this case law, and despite the potential avenue of relief it might provide for someone in Defendant's position, this Court simply is not the proper forum for determining whether Defendant may invoke the doctrine of "credit for time at liberty" to reduce his term of incarceration under this Court's March 14, 2002 judgment.  As the Government correctly observes, "[t]he authority of a district court to re-sentence a defendant is limited by statute."  *United States v. Ross,* 245 F.3d 577, 586 (6th Cir. 2001) (citing 18 U.S.C. § 3582(c)); *see also United States v. Goode,* 342 F.3d 741, 743 (7th Cir. 2003) ("Once a court sentences a criminal defendant, it has jurisdiction to continue hearing related issues only when authorized by statute or rule."). The pertinent federal statute, in turn, generally prohibits the modification of "a term of imprisonment once it has been imposed," except (i) " upon motion of the Director of the Bureau of Prisons," (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," or (iii) in the event that a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c).

The first and third of these statutory exceptions do not apply here, nor does Rule 35 authorize a reduction of Defendant's sentence under the present circumstances.  This leaves only the possibility that some other statute might "expressly permit[]" the relief sought by Defendant.  As explained in *Ross,* 245 F.3d at 586, however, these additional statutory sources of a district court's authority to modify a sentence are only two in

9

number — namely, re-sentencing is permitted (i) "[u]pon the issuance of relief under 28

U.S.C. § 2255," or (ii) "upon remand from a Court of Appeals or the Supreme Court to

the district court."  Again, neither of these potential avenues of sentence relief is available

here.[5]

Rather, it is evident from the case law that Defendant must proceed via a different

route if he is to obtain any credit for the time he remained at liberty between his 2002

sentencing and the BOP's 2008 effort to implement this sentence.  First, to the extent that

---

[5]In the brief in support of his motion, and again at the April 27, 2009 hearing, Defendant has identified the decision in *United States v. Mayes,* No. 97-6430, 1998 WL 552673 (6th Cir. Aug. 19, 1998), as supplying the requisite jurisdictional basis for this Court to grant the relief he seeks.  Yet, *Mayes* is of no assistance to Defendant here, for a number of reasons.  First and foremost, *Mayes* does not recognize any free-standing district court authority to revisit a sentence following its imposition, whether on due process or other grounds.  Rather, the district court in that case held, and the Sixth Circuit agreed, that it had the power to correct a clerical error in the defendant's sentence pursuant to Fed. R. Crim. P. 36.  *See Mayes,* 1998 WL 552673, at *3.  Only ***after*** affirming this district court authority did the Sixth Circuit turn to the "core due-process question" raised in the defendant's appeal — namely, whether it was "too late" for the district court to exercise this acknowledged power to correct a clerical error.  1998 WL 552673, at *4.  Thus, the due process principles addressed by the court in *Mayes* did not ***expand*** the district court's power to correct a sentence, but rather operated to ***limit*** this power.  These principles are of no aid to Defendant here, who first must identify a ***source*** of this Court's posited authority to modify the sentence it imposed back in March of 2002.  More generally, while *Mayes* addresses a district court's attempt to correct an error in the imposition of a sentence, Defendant has not identified any comparable defect in this Court's imposition of his sentence, but instead complains of delay in the ***implementation*** of this lawful sentence.  *Mayes* has nothing to say on this subject.

The Government has identified an additional problem with Defendant's reliance on the unpublished decision in *Mayes.*  Specifically, in a subsequent ***published*** decision, the Sixth Circuit expressly observed that *Mayes* was not "binding upon us" and "decline[d] to follow" this ruling, explaining that the due process "'test' applied by *Mayes*" was "problematic."  *United States v. Sanders,* 452 F.3d 572, 582-83 (6th Cir. 2006).  Accordingly, even if the Court could reach the due process concerns addressed in *Mayes,* it would be obligated to analyze Defendant's due process challenge under the standards set forth in *Sanders.*  Without straying too far along this tangent, it is fair to say that the ruling in *Sanders* is not helpful to Defendant here.

10

there is any statutory authority for awarding Defendant credit toward the service of his sentence under the circumstances of this case, he must first seek such relief from the BOP and exhaust any available administrative remedies before seeking judicial review of the BOP's determination on this point.  *See United States v. Wilson,* 503 U.S. 329, 334-36, 112 S. Ct. 1351, 1354-55 (1992); *United States v. Westmoreland,* 974 F.2d 736, 737-38 (6th Cir. 1992).[6]  Next, because Defendant is "contesting the manner in which his sentence is [being] executed," and not his underlying conviction or sentence, he must pursue such a challenge under 28 U.S.C. § 2241 once he is taken into federal custody. *See Stevenson v. United States,* 495 F. Supp.2d 663, 665-67 (E.D. Mich. 2007); *see also Vega,* 493 F.3d at 313 (entertaining a federal prisoner's request for credit for time at liberty in the context of a habeas corpus petition brought under § 2241).  His present motion, therefore, is premature, as well as being directed at the wrong court — namely, the sentencing court, rather than the district court for the district in which he is to report for incarceration.[7]

## IV.  <u>CONCLUSION</u>

---

[6]The Court need not (and does not) decide whether the BOP is authorized to grant any credit under the circumstances of this case, nor whether there might be any available administrative remedies for Defendant to pursue.

[7]To the extent that Defendant seeks the dismissal of the charges against him, rather than credit toward his sentence, the Court agrees with the Government that there is no known basis in the law for such relief, where Defendant does not identify any defect in the charges against him, and where he has been lawfully convicted of these charges pursuant to a valid guilty plea. Similarly, Defendant has not suggested any ground upon which to challenge the lawfulness of the sentence imposed in the March 14, 2002 judgment.  Rather, as explained, his challenge goes solely to the implementation of this sentence.

11

For the reasons set forth above, as well as the reasons stated at the April 27, 2009 hearing,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's December 18, 2008 motion to dismiss or for sentence of time served (docket #131) is DENIED.  In accordance with this ruling, and as stated at the April 27 hearing, Defendant shall report to the federal institution designated by the Bureau of Prisons, FCI Estill in South Carolina, on or before *May 4, 2009.*


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  April 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record and Bureau of Prisons on April 29, 2009, by electronic and/or ordinary mail.

s/Ruth Brissaud
Case Manager

12